UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS RAY THOMPSON,<br><br>             Petitioner,<br><br>     v.<br><br>CHRISTIAN PFEIFFER,<br><br>             Respondent. | No.  2:19-cv-2175 WBS KJN P<br><br><br><u>FINDINGS & RECOMMENDATIONS</u> |

I. <u>Introduction</u>

      Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his April 2017 conviction for battery by an inmate on a nonconfined person while armed with a deadly weapon, and possession of a sharp instrument by an inmate.  On May 19, 2017, petitioner was sentenced to 25 years to life in state prison.  Petitioner claims that:  (1) a discriminatory prosecution scheme violated his right to equal protection; (2) code of silence violated his right to due process; (3) forced self-representation violated his right to counsel; (4) denial of a corrections expert for the defense violated his right to due process; and (5) a correctional officer's perjury at trial undermined his defense and deprived him a fair trial.  After careful review of the record, this court concludes that the petition should be denied.

\\\\

II. <u>Procedural History</u>

On April 11, 2017, a jury found petitioner guilty of battery by an inmate on a nonconfined person, California Penal Code § 4501.5, while armed with a deadly weapon, California Penal Code §§ 667(e)(2)(C)(iii) & 1170.12(c)(2)(C)(iii), and possession of a sharp instrument by an inmate, California Penal Code § 4502(a). (ECF No. 15-5 at 285-89.) The court sustained two strike allegations. On May 19, 2017, petitioner was sentenced to 25 years to life in state prison. (<u>Id.</u> at 328.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. (ECF No. 15-8.) The Court of Appeal affirmed the conviction on November 26, 2018. (ECF No. 15-9.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on February 27, 2019. (ECF Nos. 15-10 & 15-11.)

Petitioner filed the instant petition on October 21, 2019. (ECF No. 1.) Respondent filed an answer on June 4, 2020. (ECF No. 14.) Petitioner filed a traverse on April 29, 2021. (ECF No. 32; <u>see also</u> ECF No. 33.)

III. <u>Facts</u>[1]

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein. In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> On April 21, 2016, around 11:45 a.m., Correctional Officers Seth Mohr, Marcus Jordan and Charles Pierce were walking in a yard at the California State Prison, Folsom, and headed in the direction of their assigned cell block. They saw defendant, an inmate at the prison, conduct a "pass"—the transfer of an object through a handshake—with an inmate named Avila. The officers suspected this was a drug transaction, the only reason inmates of different races would mix. There was insufficient staff to investigate the matter in the yard, so the officers continued to observe the inmates. Officers Mohr and Jordan saw defendant bend over and put something in his

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Thompson</u>, No. C084825, 2018 WL 6167319 (Cal. Ct. App. Nov. 26, 2018), a copy of which was lodged by respondent as ECF No. 15-9.

left sock. Officer Mohr notified the observation tower there would be a patdown search of two inmates.

The three officers, accompanied by Correctional Officer Michael Burkhart, went to the yard and detained defendant and an unidentified inmate who was accompanying him. Officer Mohr conducted a patdown of defendant and found nothing. The other inmate was released after his patdown revealed nothing. Defendant was then searched by Officer Jordan, who detected an item in defendant's left sock and asked defendant what was there. Officer Jordan was bent over and his hand was on defendant's back area as a precautionary measure. Defendant spun around and punched Officer Jordan twice in the head. Officer Pierce pushed defendant to the ground, but defendant was on top of Officer Jordan and continued to strike him.

Officer Burkhart, who was on top of defendant, punched defendant several times in an attempt to subdue him. Officer Pierce punched defendant as well. Officer Burkhart eventually assisted Officer Jordan in separating himself from defendant, and then placed defendant in restraints.

As a result of the attack, Officer Jordan suffered scars to his hand, wrist, eyebrow, and knee, as well as a fat lip and cut cheek. During a search of defendant after the attack, a manufactured plastic stabbing weapon was found in his sock.

Following a jury trial, defendant was convicted of battery by a prisoner on a nonconfined person (Pen. Code, § 4501.5)[1] while armed with a deadly weapon (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii) ) and possession of a sharp instrument by an inmate (§ 4502, subd. (a) ). The trial court sustained two strike allegations. (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2).) The trial court sentenced defendant to serve 25 years to life in state prison, and imposed various fines and fees.

[N.1 Undesignated statutory references are to the Penal Code.]

(Thompson, 2018 WL 6167319, at *1; see also ECF No. 15-9.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme

4

Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939

(9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Petitioner's Claims

   A. Discriminatory Prosecution Scheme Violated Equal Protection Right (Claim 1)

Petitioner claims that the state selectively prosecutes inmates for using unnecessary or excessive force against guards but does not prosecute guards for similar behavior against inmates. (ECF No. 1 at 5-7.)  He asserts that this differential treatment violated his right to equal protection.  (Id.)

In response, respondent argues that the state court's denial of this claim did not unreasonably apply clearly established federal law.  (ECF No. 14 at 7.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant filed a pretrial motion pursuant to *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 (*Murgia*) for discovery of evidence of discriminatory prosecution, alleging the prison administration selectively prosecutes inmates for weapons possession and assaults while not prosecuting guards for unnecessary or excessive force, or for deliberately provoking incidents. As evidentiary support for his motion, defendant attached case law, a newspaper from 2005 regarding excessive force charges filed by California prison inmates against correctional officers, and excerpts from a California Senate hearing on California State Prison, Folsom. The trial court denied the motion, finding defendant failed to make an adequate showing that would justify discovery.
>
> The showing required to invoke the discovery rights that *Murgia, supra,* 15 Cal.3d 286 provides is set forth in *United States v. Armstrong* (1996) 517 U.S. 456 [134 L.Ed.2d 687]: defendants must produce some evidence of differential treatment of similarly situated members of other races or protected classes along with evidence of discriminatory motivation.  (*Id.* At p. 470.) Defendant's *Murgia* motion alleged discrimination between inmates and guards.[2] This alleged discrimination did not involve race, a protected class, or similarly situated class members. We conclude defendant's *Murgia* motion was properly denied.

7

> [N.2 In this section of his brief, defendant contends the lack of action against inmate Aliva and failure to join him as an indispensable party is dispositive of the case, although a convict code of silence prevented him from making this argument. We need not address this one-sentence, unsupported contention because the equal protection argument is based on alleged discrimination between guards and inmates.]

(Thompson, 2018 WL 6167319, at *2; see also ECF No. 15-9.)

A prosecutor's discretion to prosecute an individual is subject to constitutional constraints. United States v. Armstrong, 517 U.S. 456, 464 (1996); see generally Bolling v. Sharpe, 347 U.S. 497, 498-500 (1954). Under the Fourteenth Amendment, a prosecutor may not prosecute an individual "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" Armstrong, 517 U.S. at 464 (citing Oyler v. Boles, 368 U.S. 448, 456 (1962)). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" Id. at 465 (citing United States v. Chemical Found., Inc., 272 U.S. 1, 14-15 (1926)). This means a defendant must make a "credible showing of different treatment of similarly situated persons" to be entitled to discovery on this issue. Armstrong, 517 U.S. at 468-70 (stating that this standard "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution.")

Here, the state court's rejection of his claim was not objectively unreasonable. Petitioner's discovery request was broad and requested evidence of all incidents over 14 years involving "[p]ossession of weapons or batteries and excessive force and things of that nature to show double standard" to support his discriminatory prosecution argument. (ECF No. 15-4 at 46-47; see also ECF No. 15-6 at 5-8.) The trial court found that petitioner had not made an adequate showing to justify his discovery request and denied the motion. (Id. at 48, 71; see also id. at 67-68.) This court agrees with the state court. The documents petitioner attached to his discovery motion were unrelated to his case or the prison institution where the offense occurred. From this court's independent review of the record, petitioner presented no evidence to rebut the presumption that prosecution had not violated equal protection. Said another way, petitioner has not shown with credible evidence that he was treated differentially than similarly situated

persons.

In his traverse, petitioner asserts there is no clearly established Supreme Court precedent addressing this issue and asks this court to look to state court decisions to support "his position calling for the expansion of equal protection as to include treating 'different persons' the same, laying the foundation for judicial reexamination of the legislatures criminal justice policy." (ECF No. 32 at 2-3.) This argument lacks merit for a few reasons. First, the Supreme Court has clearly established precedent on what is required to establish a selective prosecution claim or defense. See Armstrong, 517 U.S. at 463-66. The state court relied on this precedent in reaching its decision. (ECF No. 15-9.) Second, petitioner's reliance on Keys v. Pennsylvania is misplaced. (ECF No. 32 at 3; Keys v. Pennsylvania, No. 3:CV-10-2487, 2011 WL 766978 (M.D. Pa. Jan. 19, 2011).) Although the plaintiff in that case alleged that defendants selectively prosecuted him, the court dismissed those claims. Keys, 2011 WL 766978, at *27.

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. This court recommends denying relief on claim one.

B. Code of Silence Violating Right to Due Process (Claim 2)

Petitioner claims that there is a "code of silence" between inmates and another one between guards that prohibited him from being able to defend himself in violation of his due process rights. (ECF No. 1 at 9.) More specifically, he claims that this "code of silence" prevented him from "meeting procedural requirements, giving offers of proof as to witness testimony, establishing materiality to discovery request, laying foundations to relevance…or testifying on his own behalf." (Id.)

In response, respondent argues that a fair-minded jurist could agree that petitioner did not show that he was denied an opportunity to call witnesses or present his defense. (ECF No. 14 at 11.)

In the last reasoned state court decision, the state appellate court rejected this claim:

> Defendant's next claim alleges a "code of silence" prevented him from presenting a defense, a violation of his due process rights. The record contains no evidence supporting this claim. The fact that defendant could not get witnesses to support his theory of defense does not support an inference that his right to present a defense was

violated.

(Thompson, 2018 WL 6167319, at *2; see also ECF No. 15-9.)

      The Sixth Amendment guarantees a defendant "two correlative and mutually exclusive…rights: the right to have counsel, on one hand, and the right to refuse counsel and represent himself, on the other." United States v. Gerritsen, 571 F.3d 1001, 1007 (9th Cir. 2009); see Faretta v. California, 422 U.S. 806, 807, 819 (1975). Before a defendant chooses to represent himself, the court must make him "aware of the dangers and disadvantages of self-representation." Faretta, 422 U.S. at 835. A criminal defendant has the right to testify and the right to present witnesses in his defense. See Rock v. Arkansas, 483 U.S. 44, 49 (1987); Chambers v. Mississippi, 410 U.S. 284, 302 (1973). "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers, 410 U.S. at 302; see also United States v. Flewitt, 874 F.2d 669, 675 (9th Cir. 1989) ("Pro se status does not excuse a criminal defendant from complying with the procedural or substantive rules of the court.")

      Here, the state court's rejection of petitioner's claim was not objectively unreasonable. In pre-trial proceedings, petitioner repeatedly argued that there was a "code of silence" that prevented him from defending himself. (ECF No. 15-4 at 88, 154.) The trial court rejected this argument. (Id. at 125 ("Mr. Thompson, that's up to you…You can't say it because of a code of silence. You're here defending yourself.")) The trial court provided petitioner with the following explanation:

> You represent yourself. You are now a lawyer sitting there…As a lawyer, you put on a vigorous defense, and you use all the tools that you feel will help in your defense. If [you] don't, the Court isn't going to explain to the jury or not allow you to explain to the jury why you didn't use them. That's inappropriate.
>
> Also, it invites the jury to speculate and guess, and they're not allowed to do that either. Only allowed to listen to all the evidence in the case. They are judges of the facts. You need to bring facts. That's what they're going to use to make their determination.

(Id. at 155-56; see also id. at 194 ("You've shown no evidence or relevance to a Code of Silence,

whether it exists, what exists. When I ask you what offer of proof you have, you tell me you can't tell me because of the Code of Silence. Court has nothing. No evidence, no facts, no witnesses, no nothing."))  After reviewing the trial record, this court finds no evidence to support petitioner's claim.  The fact that petitioner could not find witnesses to support his defense theory does not mean that he was deprived of due process.  Poor self-representation is not enough to establish a due process violation.  See, e.g., Faretta, 422 U.S. at 834-45; Flewitt, 874 F.2d at 673 ("That choice, as with all the other strategic decisions made by a pro se litigant, is his own. Having refused this assistance [of counsel], however, he may not be heard to complain later that the court failed to protect him from his own ineptitude."); United States v. Banks, 828 F.3d 609, 617 (7th Cir. 2016); People v. Taylor, 47 Cal. 4th 850, 866 (2009).

Petitioner claims that Madrid v. Woodford proves that a "code of silence" exists and was at work in his case.  See Madrid v. Woodford, No. C90-3094, 2004 WL 2623924 (N.D. Cal. Nov. 17, 2004).  This argument fails for a few reasons.  First, the Madrid case occurred over a decade before petitioner's criminal case and concerned events at a different prison.  Second, petitioner did not present any evidence or witnesses to testify to the report discussed in the Madrid case or any evidence showing a nexus between the deficiencies in Madrid and petitioner's physical altercation with the guards.  Lastly, the focus of the report in Madrid was "the ability to effectively investigate and discipline officers charged with abusing force (or interfering with abuse of force investigations)."  Madrid, 2004 WL 2623924, at *8.  Here, there is no evidence that the prison guards used unnecessary force against petitioner.  To the contrary, the evidence at trial established that petitioner physically attacked a guard during a pat-down search for contraband and the guards used force to constrain him. (ECF No. 15-4 at 110, 239.)  There is no evidence that petitioner sustained any injuries from the altercation. (ECF No. 15-5 at 124-25, 129.)

The state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.  This court recommends denying habeas relief on claim two.

////

...

C. Forced Self-Representation Violated his Right to Counsel (Claim 3)

Petitioner claims that his Sixth Amendment rights were violated by the trial court's denial of his "Marsden[3] motion, forcing him to represent himself" and to waive his right to assistance of counsel. (ECF No. 1 at 13-15.)

In response, respondent argues that petitioner's claim does not warrant habeas relief because it does not implicate clearly established federal law. But even under de novo review, respondent asserts that the claim would fail. (ECF No. 14 at 12.)

In the last reasoned opinion, the state appellate court considered and denied his claim.

> Defendant made a *People v. Marsden* (1970) 2 Cal.3d 118 motion in which he alleged trial counsel was deficient in failing to file or investigate motions he suggested for suppressing evidence of his search and to enjoin or dismiss the prosecution based on equal protection and code of silence grounds. Counsel responded that she reviewed and researched his claims and determined they did not support any viable motion. The trial court denied the motion. Defendant subsequently exercised his *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] right to represent himself. Defendant now claims he was forced into exercising his *Faretta* rights by the allegedly erroneous denial of his *Marsden* motion.
>
> "Once a defendant is afforded an opportunity to state his or her reasons for seeking to discharge an appointed attorney, the decision whether or not to grant a motion for substitution of counsel lies within the discretion of the trial judge. The court does not abuse its discretion in denying a *Marsden* motion " 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " [Citations.] Substantial impairment of the right to counsel can occur when the appointed counsel is providing inadequate representation or when 'the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation].' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 912.)
>
> None of the motions defendant wanted trial counsel to file or investigate had any merit. Prison inmates have a significantly reduced expectation of privacy, including the privacy interest in their own bodies that must bow to the prison administrator's interest in checking the flow of drugs, dangerous weapons, or other contraband into prison. (*People v. King* (2000) 82 Cal.App.4th 1363, 1374.) Any suppression motion would therefore lack merit. As we have already discussed, defendant's contentions regarding discriminatory prosecution and the "code of silence" are also without merit. "Counsel's failure to make a futile or unmeritorious motion or

---

[3] *People v. Marsden*, 2 Cal. 3d 118 (1970).

12

> request is not ineffective assistance. [Citations.]" (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.) Since there is no evidence of a breakdown in communications or ineffective assistance, the trial court did not err in denying the *Marsden* motion.

(Thompson, 2018 WL 6167319, at *2-3; see also ECF No. 15-9.)

       i.    Marsden Motion

A defendant has a Sixth Amendment right to conflict-free representation. Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Moore, 159 F.3d 1154, 1157 (9th Cir. 1998). But not every conflict between a criminal defendant and his counsel implicates this right. Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc); see also Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (holding that the right to counsel does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship.'") The Ninth Circuit stated that it is "not aware" of "any Supreme Court case suggesting that the Sixth Amendment is violated when a defendant "dislike[s] or distrust[s]" his counsel. Carter v. Davis, 946 F.3d 489, 508-09 (9th Cir. 2019) (quoting Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc)). To request a substitution of counsel, a criminal defendant may file a Marsden motion identifying an irreconcilable conflict with his appointed counsel. Schell, 218 F.3d at 1021. The question before this federal habeas court is whether the trial court's denial of the Marsden motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1026.

Here, the state court's conclusion that there was not an irreconcilable conflict warranting a substitution of counsel was not objectively unreasonable. The trial court held a Marsden hearing outside the presence of the prosecutor and listened to petitioner's complaints about his appointed counsel. (ECF No. 15-4 at 23; see also ECF No. 38 (sealed Marsden hearing transcript).) In his habeas petition, petitioner claims that he had an irreconcilable conflict with appointed counsel because counsel did not research the California Correctional Peace Officers Association's financial contributions to the judiciary, file a Fourth Amendment search and seizure motion, and

13

request to enjoin the prosecution on the grounds that the criminal proceedings were politically motivated. (ECF No. 1 at 13-16.) The state appellate court concluded that none of petitioner's motions had merit and there was no breakdown in communication. (ECF No. 15-9.) After reviewing the record, this court finds no error in the state court's ruling. The trial court gave petitioner an adequate opportunity to explain his reason for wanting to substitute counsel. The record indicates that his appointed counsel provided competent representation, but petitioner disagreed with his appointed counsel's defense strategy. Tactical issues, however, are the responsibility of trial counsel. Any disagreements between petitioner and his counsel on such issues do not amount to a complete breakdown in communication. See Carter, 946 F.3d at 507-08; Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007). Because there was no total breakdown in communication, the court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. This court recommends denying habeas relief on this claim.

        ii.    Faretta Motion

A defendant may waive the right to counsel and choose to represent himself at trial. Faretta, 422 U.S. at 835. Any waiver of the right to counsel must be knowing, voluntary, and intelligent. Id.; see also Arrendondo v. Neven, 763 F.3d 1122, 1136 (9th Cir. 2014). A waiver is knowing and intelligent if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835 (quoting Adams v. McCann, 317 U.S. 269, 279 (1942); see also United States v. Hantzis, 625 F.3d 575, 580 (9th Cir. 2010).

Petitioner's claim that he involuntarily waived his right to counsel does not warrant habeas relief. Before trial, petitioner made a Faretta motion to represent himself. (ECF No. 15-4 at 13; see also id. at 14 (petitioner stating that "I've been pro per about five or six times and I've beat majority of the cases through dismissal or through acquittals.")) The trial court informed petitioner of the charges against him, the potential sentence, and thoroughly admonished of his rights. (ECF No. 15-4 at 13-25.) When asked by the court if he was freely and voluntarily waiving his right to counsel, petitioner said yes. (Id. at 24-25.) The trial court found his waiver

to be freely, knowingly, and voluntarily entered into and granted his <u>Faretta</u> motion. (<u>Id.</u> at 25.) This court concludes that the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, and recommends denying any relief on this claim.

        D. Denial of Expert Request Violated Right to Due Process (Claim 4)

Petitioner claims that the trial court's denial of his expert request violated his due process rights because an expert was critical to explaining his "code of silence" defense. (ECF No. 1 at 19-20.)

In response, respondent argues habeas relief is not warranted because there is no clearly established federal law entitling petitioner to an expert for his "code of silence" defense. (ECF No. 14 at 13-14.)

In the last reasoned state court opinion, the state appellate court considered and rejected this claim:

> Defendant contends the trial court deprived him of his due process right to present a defense by denying his motion to appoint an expert on corrections to establish an affirmative defense to the weapons charge and self-defense to the battery charge. However, defendant's motion did not identify such an expert, and he has not identified one on appeal. We are not surprised defendant could not identify a corrections expert who would testify to support his affirmative defenses. However, the fact he was not able to call an expert does not mean he was deprived of his due process right to present a defense.
>
> Defendant sought to present Kevin Steele, a sergeant with the Department of Corrections and Rehabilitation, as an expert in support of his "code of silence" claim. At the Evidence Code section 402 hearing, Sergeant Steele testified he was not familiar with a "Hagar report" on the use of force in state prisons, a "Madrid" case regarding the use of force, or how the "code of silence" came into play following the "Madrid" case. The court denied defendant's motion to allow Sergeant Steele to testify as an expert witness. He contends on appeal that Sergeant Steele perjured himself to avoid testifying as a defense expert.

(<u>Thompson</u>, 2018 WL 6167319, at *3; <u>see also</u> ECF No. 15-9.)

A criminal defendant has a constitutional right to have "'a meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California</u>

15

v. Trombetta, 467 U.S. 476, 485 (1984)). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," including evidentiary rules. United States v. Scheffer, 523 U.S. 303, 308 (1998); see also Holmes v. South Carolina, 547 U.S. 319, 324 (2006). "Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 509 (2013) (per curiam).

The Supreme Court has not clearly addressed whether a court's discretion to exclude expert testimony violates a defendant's constitutional right to present relevant evidence. See Moses v. Payne, 555 F.3d 742, 758 (9th Cir. 2009); Palermo v. Olivarez, No. 99-17043, 2000 WL 1131882, at *3 (9th Cir. Aug. 9, 2000) (holding that excluding testimony from a witness who did not qualify as an expert did not violate defendant's due process rights). Nor has the Court articulated "'a controlling legal standard' for evaluating discretionary decisions to exclude the kind of evidence at issue here." Moses, 555 F.3d at 758-59 (internal citation omitted); see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011).

Here, petitioner's claim is unavailing for several reasons. First, the absence of clearly established Supreme Court precedent establishing a right to federal habeas relief based on the exclusion of expert evidence pursuant to state evidentiary rules is fatal to his claim. See, e.g., Moses, 555 F.3d at 758-60; Brown, 644 F.3d at 983. Petitioner cannot—like the petitioners in Moses and Brown could not—show that the state appellate court's ruling was contrary to or an unreasonable application of clearly established Supreme Court precedent. Second, based on this court's independent review of the record, the trial court did not arbitrarily exclude petitioner's proposed expert evidence. During pretrial proceedings, the trial court told petitioner that he could call Sergeant Steele as a witness and "ask him questions based on his training and experience in the prisons about what his understanding of the Code of Silence – what it means and what his understanding of prison politics is." (ECF No. 15-4 at 89.) Before trial, the trial court held a hearing to determine whether Sergeant Steele could qualify as an expert witness on the "code of silence." (Id. at 96-118.) Sergeant Steele testified that he was not aware of a "code of silence," the "Hagar report" and related Senate hearings, or a "remedial plan" from the "Madrid" case.

(Id. at 104-10.) Due to the witness's lack of knowledge in these areas, the trial court determined that the witness could not qualify as an expert for petitioner's purposes. (Id. at 114-18, 123-24.) The state appellate court issued a reasoned decision concluding that the trial court did not err in concluding that the witness was not qualified as an expert. Considering the record, this court concludes that the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

To the extent that petitioner argues that he was entitled to a court-appointed corrections expert, this lacks merit. In Ake v. Oklahoma, the Supreme Court held that due process requires that a state provide an indigent defendant with access to a competent psychiatrist to prepare an effective defense based on his mental condition if sanity at the time of the offense is at issue in the case. Ake v. Oklahoma, 470 U.S. 68, 83 (1985); see also McWilliams v. Dunn, 127 S. Ct. 1790, 1793 (2017). But Ake does not apply here because petitioner's mental condition at time of the offense was not at issue. Furthermore, the Supreme Court has never held that indigent defendants are entitled to other types of expert witnesses, like the one petitioner requests in this case. See Schroeder v. Premo, 714 F. App'x 666, 670 (9th Cir. 2017). For the reasons stated above, this court recommends denying habeas relief on claim four.

E. Denial of Perjury Challenge (Claim 5)

Petitioner claims that trial court erred when it denied petitioner's perjury challenge to Sergeant Steele's hearing testimony and petitioner's mid-trial Pitchess[4] motion to access witnesses' personnel files. (ECF No. 1 at 23-24; see also ECF No. 32 at 7-10.)

In response, respondent argues that the state appellate court reasonably rejected petitioner's assertion that Sergeant Steele committed perjury. (ECF No. 14 at 14-15.)

In the last reasoned state court opinion, the state appellate court rejected petitioner's claim:

> " 'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the [defendant's] burden to affirmatively demonstrate error.' [Citation.]"

---

[4] Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), superseded by statute as stated in Long Beach Officers Ass'n v. City of Long Beach, 59 Cal. 4th 59 (2014).

17

> (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) There is nothing in the record supporting defendant's perjury claim. Also, defendant fails to establish how any such perjury, if it existed, deprived him of a fair trial or established prejudicial error.

(Thompson, 2018 WL 6167319, at *3; see also ECF No. 15-9.)

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnotes omitted); see Napue v. Illinois, 360 U.S. 264, 269 (1959). To state a successful claim, petitioner must show that (1) the evidence was false, (2) the prosecutor knew or should have known that the evidence was false, and (3) the false evidence was material. United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003); see also Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc). A witness testifying under oath commits perjury if the witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Conclusory allegations that are not supported by statements of fact do not warrant habeas relief. Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Here, the state appellate court's rejection of petitioner's perjury challenge was not objectively unreasonable. Before trial, petitioner alleged that Sergeant Steele perjured himself to avoid qualifying as a defense expert. (ECF No. 15-4 at 152.) The trial court rejected his claim, stating that it had "not found anything that substantiates a false report at this time or perjury on the stand at this time." (Id. at 153.) Petitioner also raised this argument after the close of the evidence at trial, and the trial court again found that there was no evidence that Sergeant Steele lied. (ECF No. 15-5 at 218-21.) The state appellate court agreed with the trial court and concluded that petitioner failed to establish any evidence to support his perjury claim. After independently reviewing the trial record, this court concurs with the state courts. Petitioner's unsupported belief that a witness lied is insufficient to prove that the evidence was false or that the prosecution knew or should have known the evidence was false.

1    Petitioner argues that he would have had evidence to support his perjury challenge if the
2    trial court had not denied his Pitchess motions to obtain Sergeant Steele's personnel records,
3    including his training requirements. (ECF No. 1 at 23-24; see also ECF No. 15-2 at 239-66; ECF
4    No. 15-4 at 152.)  The trial court denied the filing of the first Pitchess motion because it was
5    untimely. (ECF No. 15-2 at 267-68; ECF No. 15-4 at 154, 195; ECF No. 15-5 at 26-28, 142-43.)
6    The trial court also rejected petitioner's excuse that he was unable to file the motion earlier
7    "under the code of silence" and reminded petitioner that he should take advantage of every
8    opportunity to defend himself. (ECF No. 15-4 at 154-55 ("I'm sorry if you feel the code of
9    silence permits you from putting on a defense.  You have chosen to defend yourself, and if you
10   don't access these things, the jury is not going to hear that you didn't access these things."))
11   Petitioner filed a second Pitchess motion after trial, which the court also denied. (ECF No. 15-2
12   at 289-98; ECF No. 15-3 at 13-25; ECF No. 15-5 at 313-14.)  The challenged state court rulings
13   rely entirely on state law.  The trial court denied petitioner's first motion because "it was not
14   served with adequate notice pursuant to Code of Civil Procedure section 1005(a)(6) and 1005(b)
15   and that the Motion has not been filed with the Court pursuant to CCP 1005(b)." (ECF No. 15-2
16   at 268.)  The trial court denied petitioner's second motion on the same procedural grounds. (ECF
17   No. 15-5 at 314.)  Petitioner may not seek federal habeas relief for alleged errors in the
18   application of state law.  See Corcoran, 562 U.S. at 5; McGuire, 502 U.S. at 67-68.
19       The state court's decision was not contrary to, or an unreasonable application of, clearly
20   established Supreme Court authority, and this court recommends denying habeas relief on claim
21   five.

VI. Conclusion

23       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of
24   habeas corpus be denied.
25       These findings and recommendations are submitted to the United States District Judge
26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
27   after being served with these findings and recommendations, any party may file written
28   objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 3, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

\TAA\thom2175.157